**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RYAN GRAYSON and JAYLAE PRUITT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action File** |
| **v.** ) | **No. _____** |
| ) | |
| **MAMA BHANJA ENTERPRISES, LLC,** ) | |
| **HUDDLE HOUSE, INC., SHAMEET** ) | **JURY TRIAL DEMANDED** |
| **DESAI, and RAVIN TALATI,** ) | |
| ) | |
| **Defendants.** ) | |

## **COMPLAINT FOR DAMAGES**

COME NOW, Ryan Grayson ("Mr. Grayson") and Jaylae Pruitt ("Ms. Pruitt") (collectively, "Plaintiffs"), by and through undersigned counsel, and file this Complaint for Damages against Mama Bhanja Enterprises, LLC, Huddle House, Inc., Shameet Desai, and Ravin Talati (collectively, "Defendants"), showing the Court as follows:

## **INTRODUCTION**

1.

During their employment of Plaintiffs, Defendants violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (the "FLSA"), by (1) failing to pay Plaintiffs overtime compensation for all hours worked in excess of

40 hours per week; (2) failing to compensate Plaintiffs at the minimum wage rate for each hour worked; and (3) retaliating against Plaintiffs in response to their complaints of unpaid wages.  As a result of Defendants' FLSA violations, Plaintiffs are seeking unpaid overtime compensation, unpaid minimum wages, front pay, liquidated damages, attorneys' fees, costs, and other appropriate relief pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

### 2.

This Court has subject matter jurisdiction over the instant action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

### 3.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 (b) and (c) because the acts giving rise to this Complaint occurred within this District, and because Defendants are subject to this Court's personal jurisdiction.

## PARTIES

### 4.

Plaintiff Ryan Grayson ("Mr. Grayson") is an individual and a resident of the State of Georgia.  At all times material hereto, Mr. Grayson was a non-exempt "employee" of Defendants for purposes of the FLSA.

5.

Plaintiff Jaylae Pruitt ("Ms. Pruitt") is an individual and a resident of the State of Georgia. At all times material hereto, Ms. Pruitt was a non-exempt "employee" of Defendants for purposes of the FLSA.

6.

At all times material hereto, Plaintiffs handled, sold, and/or worked on goods or materials that have been moved in or produced for commerce and were thus engaged in commerce during their employment with Defendants.

7.

Defendant Mama Bhanja Enterprises, LLC ("Mama Bhanja") is a Limited Liability Company organized under the laws of Georgia, with a principal office address of 3484 Willow Glen Trail, Suwanee, Georgia 30024. Mama Bhanja regularly transacts business in the State of Georgia and may be served through its registered agent, Beth S. Hilscher, at 671 Main Street, Suite 200, Suwanee, Georgia, 30024.

8.

At all times material hereto, Mama Bhanja was an "employer" of Plaintiffs for purposes of the FLSA, and Mama Bhanja is jointly and severally liable to Plaintiffs for damages under the FLSA.

9.

Defendant Huddle House, Inc. ("Huddle House") is a Profit Corporation, organized under the laws of Georgia, with a principal office address of 5901-B Peachtree Dunwoody Rd., Ste. 450, Sandy Springs, Georgia, 30328.  Huddle House regularly transacts business in the State of Georgia and may be served through its registered agent, Corporation Service Company, at 40 Technology Pkwy South, #300, Norcross, Georgia 30092.

10.

At all times material hereto, Huddle House exercised control over significant aspects of the operations of Mama Bhanja, including the hiring, training, scheduling, monitoring, and compensation of Mama Bhanja's employees and the conditions of those employees' employment.  Additionally, Huddle House played a substantial role in causing the FLSA violations set forth in this Complaint.  As a result, Huddle House was an "employer" of Plaintiffs for purposes of the FLSA, and Huddle House is jointly and severally liable to Plaintiffs for damages under the FLSA.

11.

Defendant Shameet Desai ("Desai") is an individual and a resident of the State of Georgia.  On information and belief, Desai resides and may be served at 3012 Cedar Glade Lane, Buford, Georgia 30519.

12.

At all times material hereto, Desai exercised control over significant aspects of the operations of Mama Bhanja, including the hiring, firing, training, scheduling, monitoring, and compensation of Mama Bhanja's employees and the conditions of those employees' employment. Additionally, Desai played a substantial role in causing the FLSA violations set forth in this Complaint.  As a result, Desai was an "employer" of Plaintiffs for purposes of the FLSA, and Desai is jointly and severally liable to Plaintiffs for damages under the FLSA.

13.

Defendant Ravin Talati ("Talati") is an individual and a resident of the State of Georgia.  On information and belief, Talati may be served at 1070 Historic Hwy 441 Suite D & E Demorest, Georgia 30535.

14.

At all times material hereto, Talati exercised control over significant aspects of the operations of Mama Bhanja, including the hiring, firing, scheduling, and compensation of Mama Bhanja's employees and the conditions of those

employees' employment.  Additionally, Talati played a substantial role in causing the FLSA violations set forth in this Complaint.  As a result, Talati was an "employer" of Plaintiffs for purposes of the FLSA, and Talati is jointly and severally liable to Plaintiffs for damages under the FLSA.

15.

At all times material to this action, Defendants were Plaintiffs' "joint employer" for purposes of the FLSA due to an arrangement between the Defendants to share the services of Plaintiffs, and/or because one Defendant acted directly or indirectly in the interest of the other Defendants in relation to Plaintiffs, and/or because the Defendants shared control over Plaintiffs' employment, and/or because one Defendant controls other Defendants.

16.

Through unified operation and/or common control, the Defendants perform related activities for a common business purpose—the development, operation, and success of the Huddle House Gainesville franchise located at 1920 Jesse Jewell Pkwy, Gainesville, Georgia 30501, where Plaintiffs primarily worked, as well as the promotion and furtherance of the Huddle House brand.  Mama Bhanja is the franchisee for this location.  "Mama Bhanja" means "Uncle Newphew" in Hindi.

Talati and Desai are uncle and nephew, respectively, and are the principal officers and operators of Mama Bhanja. Huddle House is the franchisor of Mama Bhanja.

17.

Huddle House exercises substantial control and supervision over Mama Bhanja and the terms of its employees' employment. Among other controls, Huddle House provided extensive start-up support to Mama Bhanja, held mandatory management and staff training for Mama Bhanja and its personnel lasting for several months (where Huddle House set the training schedule and agenda), and directed the initial hiring of Mama Bhanja's staff. Huddle House made the determination as to when the Gainesville store had sufficient staff to open the store to the public, resulting in an opening freeze of several weeks. Huddle House personnel keeps close tabs on Mama Bhanja's operations, often mandates how Mama Bjana should control labor costs and staffing levels, and performs regular health and corporate standards inspections. Huddle House holds weekly conference calls with Mama Bhanja to monitor and advise on employment-related matters (including hiring, training, and pay). Huddle House monitors labor costs and requires Mama Bhanja to send Huddle House its staff schedule each week. Huddle House establishes and enforces specific employment, operational, and appearance standards, specifications, and policies for Mama Bhanja. Huddle House

controls Mama Bhanja's managerial functions, including mandating the type and amount of inventory ordered, as well as the entities from which inventory can be ordered. Significantly, Huddle House maintains the right to terminate Mama Bhanja's franchise and to replace Mama Bhanja or else assume Mama Bhanja's store. Huddle House also maintains responsibility for ensuring and facilitating Mama Bhanja's compliance with state and federal laws and regulations, including the FLSA. In this manner, Defendants share in operational and managerial control over the Gainesville store, and each Defendant's operations are interdependent of and benefit from the other Defendants' operations.

18.

Collectively, the Defendant-employers comprise an "enterprise" for purposes of the FLSA (the "Enterprise"). At all times material hereto, the Enterprise had two or more employees who handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce. The Enterprise's annual gross volume of sales made or business done was at least $500,000.00 during Plaintiffs' employment.

19.

Plaintiffs Mr. Grayson and Ms. Pruitt assert separate claims for relief against Defendants, but each Plaintiff's respective claims arise out of the same transaction,

occurrence, or series of transactions or occurrences, and questions of law and fact common to both Mr. Grayson and Mr. Pruitt will arise in this action.  Thus, joinder of the parties is proper pursuant to Rule 20 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

20.

Mr. Grayson worked for Defendants as a manager from November 2016 until September 9, 2017.  Defendants promised to pay Mr. Grayson at the hourly regular rate of $13.00.

21.

Ms. Pruitt worked for Defendants as a manager from April 2017 until the date of her termination on or about September 10, 2017.  Defendants promised to pay Ms. Pruitt at the hourly regular rate of $12.00.

22.

Throughout Plaintiffs' respective employment with Defendants, Defendants regularly instructed Plaintiffs to work "off the clock" or else to clock-in under Defendant Desai's name so that Plaintiffs could continue to perform managerial functions within Defendants' computer systems while simultaneously allowing Defendants to avoid paying Plaintiffs for their work.

23.

In many pay periods, Defendants altered Plaintiffs' hours after the fact by unilaterally changing their clock-in and clock-out times in Defendants' timekeeping and payroll systems to avoid paying Plaintiffs for all hours actually worked by them.

24.

At various points during their respective employment, Defendants also attempted to bargain with Plaintiffs by "allowing" them pay for a set number of hours, despite the fact that Plaintiffs worked substantially more than that set amount.

25.

Although Defendants were aware of the fact that Plaintiffs regularly worked well in excess of 40 hours per week, Defendants failed to pay Plaintiffs overtime compensation for all hours worked in excess of 40 hours during each week of Plaintiffs' employment.

26.

For several weeks in May or June 2017, Defendants reduced Plaintiffs' pay to $5.00 per hour under the pretense that Plaintiffs would be "server-managers." However, because Plaintiffs' managerial duties generally did not allow them to wait tables, any tips they may have earned during this time were insufficient to

make up the $2.25/hour difference needed to compensate them at the $7.25/hour minimum wage rate required by the FLSA.

27.

As Plaintiffs believed that these FLSA violations would be remedied, and as neither was in a position to go without employment altogether, Plaintiffs continued to work for sub-standard wages, at times working for as little as $3.00 an hour.

28.

Subsequently, Defendants Desai and Talati held a meeting with Plaintiffs to discuss the restaurant's labor costs. During that meeting, Defendants apologized to Plaintiffs for the failure to properly pay them, and then asked Plaintiffs to analyze the restaurant's sales and budget data in order to devise a staff schedule that would allow Defendants to properly pay Plaintiffs.

29.

During the same meeting, Defendants also provided each Plaintiff a check for $1,000 to make up for Defendants' failure to pay Plaintiffs at their agreed-upon regular rates and Defendants' failure to pay Plaintiffs overtime compensation. Nevertheless, Defendants' improper and illegal pay practices continued.

30.

Plaintiffs frequently complained about their unpaid wages; however, the terms of their employment only worsened as a result.

31.

Months after attempting to "settle the score" with Plaintiffs by writing each a check for $1,000, Defendants retaliated against Plaintiffs by suddenly claiming that their respective $1,000 checks (as well as a cash payment totaling $300 provided as cab fare weeks earlier) were actually loans which Plaintiffs were required to repay via further reductions to their weekly pay.   On or about September 8, 2017, Plaintiffs were each required to sign a "loan agreement" for this purpose.

32.

Unwilling to continue working without proper pay (or while subject to the purported loan agreement's additional weekly pay reductions), Mr. Grayson resigned his employment on September 9, 2017.

33.

In addition to unpaid minimum wages, regular wages, and overtime compensation, Mr. Grayson is also entitled to the total amount of $666.35 for the documented, unreimbursed expenses he incurred on Mama Bhanja's behalf during his employment.

34.

Ms. Pruitt was terminated on September 10, 2017.  Although she applied for work at other local Huddle House restaurants, she was denied employment due to her termination by Mama Bhanja and told that this would be considered "Huddle House jumping."

35.

In further retaliation against Plaintiffs, Defendants then wrongfully withheld the entire amount of each Plaintiff's last paycheck.

36.

In further retaliation against Plaintiffs, Defendants then contested Plaintiffs' rights to obtain unemployment insurance benefits, falsely contending that Ms. Pruitt was a "no call no show" to her last shift, intentionally misrepresenting the wages Plaintiffs earned, and even fabricating evidence to bolster their false allegations.

37.

Defendants knowingly suffered or permitted Plaintiffs to work more than 40 hours per week without overtime compensation and for less than the minimum wage.

38.

Defendants failed to make, keep, and preserve accurate records sufficient to determine the number of hours actually worked by Plaintiffs.

39.

Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs.

40.

Before initiating the instant suit, Plaintiffs attempted to resolve their FLSA and breach of contract disputes with Defendants; however, Defendants refused to pay Plaintiffs the unpaid compensation owed to them.

41.

By unjustifiably refusing to compensate Plaintiffs for their work as required by agreement and federal employment law, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense.

## COUNT I:  VIOLATIONS OF THE FLSA—OVERTIME
### (Ryan Grayson against all Defendants)

42.

Mr. Grayson realleges and incorporates Paragraphs 1 through 41 of this Complaint, as if fully set forth herein.

43.

14

At all times relevant hereto, Mr. Grayson was a non-exempt employee of Defendants for purposes of the FLSA. Thus, Defendants were obligated to pay Mr. Grayson at least one and one-half times his regular rate for each hour worked in excess of 40 hours per week.

44.

By failing to pay Mr. Grayson overtime compensation in accordance with § 207 of the FLSA, and by failing to make, keep, and preserve accurate records concerning Mr. Grayson's employment, despite knowledge of Mr. Grayson's status as a non-exempt employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

45.

As a result of Defendants' willful violations of the FLSA's overtime provisions, Mr. Grayson is entitled to damages, including, without limitation, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

## COUNT II:  VIOLATIONS OF THE FLSA—MINIMUM WAGE
### (Ryan Grayson against all Defendants)

46.

Mr. Grayson realleges and incorporates Paragraphs 1 through 45 of this Complaint, as if fully set forth herein.

47.

At all times relevant hereto, Mr. Grayson was a non-exempt employee for purposes of the FLSA.  Thus, Defendants were obligated to pay Mr. Grayson at a rate not less than the hourly minimum wage of $7.25 per hour.

48.

By failing to properly pay Mr. Grayson in accordance with § 206 of the FLSA, and by failing to make, keep, and preserve records sufficient to determine Mr. Grayson's wages and hours, despite knowledge of Mr. Grayson's status as a non-exempt employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

49.

As a result of Defendants' willful violations of the FLSA's minimum wage provisions, Mr. Grayson is entitled to damages, including, without limitation, unpaid wages sufficient to compensate Mr. Grayson at the minimum wage rate for all hours worked, liquidated damages, attorneys' fees, and costs.

## COUNT III:  VIOLATIONS OF THE FLSA—RETALIATION
### (Ryan Grayson against all Defendants)

50.

Mr. Grayson realleges and incorporates Paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

51.

16

In complaining about Defendants' failure to compensate him for all hours worked and at the legally required overtime and minimum wage rate, Mr. Grayson engaged in protected activity under the FLSA.

52.

Defendants unlawfully retaliated against Mr. Grayson as a result of his engagement in protected activity under the FLSA by suddenly characterizing their informal FLSA settlement payment of $1,150 to Mr. Grayson as a loan, requiring Mr. Grayson to sign a fabricated, ex post facto "loan agreement," and creating working conditions that ultimately led to Mr. Grayson's constructive discharge.

53.

Defendants' retaliatory conduct towards Mr. Grayson was willful, intentional, malicious and/or reckless.

54.

Defendants' retaliatory acts would dissuade reasonable employees of Defendants from making complaints regarding Defendants' unlawful compensation practices.

55.

Due to the unlawful retaliation to which Mr. Grayson was subjected, Mr. Grayson has suffered and continues to suffer harm, including financial loss due to weeks of lack of employment following his constructive discharge.

56.

As a result of Defendants' retaliation, Mr. Grayson is entitled to all legal and equitable relief available pursuant to § 216(b) of the FLSA, including but not limited to reinstatement, front pay, back pay, liquidated damages in an amount equal to all lost wages, pre- and post judgment interest, attorneys' fees, and costs.

## COUNT IV:  BREACH OF CONTRACT—WAGES & EXPENSES
### (Ryan Grayson against all Defendants)

57.

Mr. Grayson realleges and incorporates Paragraphs 1 through 56 of this Complaint, as if fully set forth herein.

58.

Defendants agreed to pay Mr. Grayson an hourly wage of $13.00 for each hour worked.

59.

By failing to pay Mr. Grayson for each hour worked at the agreed-upon amount of $13.00 per hour, Defendants breached their agreement with Mr. Grayson.

60.

Additionally, Mr. Grayson spent a total of $666.25 on goods and materials on Defendants' behalf, with the express understanding that he would be reimbursed for these expenditures.

61.

By failing to reimburse Mr. Grayson for his expenses, Defendants breached their agreement or implied agreement with Mr. Grayson for the same.

62.

As a result of Defendants' breach of contract, Mr. Grayson is entitled to damages, including pre-judgment interest, in an amount to be determined at trial.

## COUNT V:  ATTORNEYS' FEES AND EXPENSES
### (Ryan Grayson against all Defendants)

63.

Mr. Grayson realleges and incorporates Paragraphs 1 through 62 of this Complaint, as if fully set forth herein.

64.

As set forth above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Mr. Grayson unnecessary trouble and expense.

65.

As a result of Defendants' conduct as set forth herein, and pursuant to O.C.G.A. § 13-6-11, Defendants should be required to reimburse Mr. Grayson for the attorneys' fees and costs incurred to prosecute this action.

## COUNT VI:  VIOLATIONS OF THE FLSA—OVERTIME
### (Jaylae Pruitt against all Defendants)

66.

Ms. Pruitt realleges and incorporates Paragraphs 1 through 65 of this Complaint, as if fully set forth herein.

67.

At all times relevant hereto, Ms. Pruitt was a non-exempt employee of Defendants for purposes of the FLSA. Thus, Defendants were obligated to pay Ms. Pruitt at least one and one-half times her regular rate for each hour worked in excess of 40 hours per week.

68.

By failing to pay Ms. Pruitt overtime compensation in accordance with § 207 of the FLSA, and by failing to make, keep, and preserve accurate records concerning Ms. Pruitt's employment, despite knowledge of Ms. Pruitt's status as a

non-exempt employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

69.

As a result of Defendants' willful violations of the FLSA's overtime provisions, Ms. Pruitt is entitled to damages, including, without limitation, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

**COUNT VII: VIOLATIONS OF THE FLSA—MINIMUM WAGE**
**(Jaylae Pruitt against all Defendants)**

70.

Ms. Pruitt realleges and incorporates Paragraphs 1 through 69 of this Complaint, as if fully set forth herein.

71.

At all times relevant hereto, Ms. Pruitt was a non-exempt employee for purposes of the FLSA. Thus, Defendants were obligated to pay Ms. Pruitt at a rate not less than the hourly minimum wage of $7.25 per hour.

72.

By failing to properly pay Ms. Pruitt in accordance with § 206 of the FLSA, and by failing to make, keep, and preserve records sufficient to determine Ms. Pruitt's wages and hours, despite knowledge of Ms. Pruitt's status as a non-exempt

employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

73.

As a result of Defendants' willful violations of the FLSA's minimum wage provisions, Ms. Pruitt is entitled to damages, including, without limitation, unpaid wages sufficient to compensate Ms. Pruitt at the minimum wage rate for all hours worked, liquidated damages, attorneys' fees, and costs.

## COUNT VIII:  VIOLATIONS OF THE FLSA—RETALIATION
### (Jaylae Pruitt against all Defendants)

74.

Ms. Pruitt realleges and incorporates Paragraphs 1 through 73 of this Complaint, as if fully set forth herein.

75.

In complaining about Defendants' failure to compensate her for all hours worked and at the legally required overtime and minimum wage rate, Ms. Pruitt engaged in protected activity under the FLSA.

76.

Defendants unlawfully retaliated against Ms. Pruitt as a result of her engagement in protected activity under the FLSA by suddenly characterizing their informal FLSA settlement payment of $1,150 to Ms. Pruitt as a loan, requiring Ms.

Pruitt to sign a fabricated, ex post facto "loan agreement," terminating Ms. Pruitt's employment, refusing to hire Ms. Pruitt at any other Huddle House location, and wrongfully objecting to Ms. Pruitt's right to obtain unemployment insurance benefits by maliciously doctoring and creating evidence designed to falsely cover up Defendants' retaliatory termination of Ms. Pruitt.

77.

Defendants' retaliatory conduct towards Ms. Pruitt was willful, intentional, malicious and/or reckless.

78.

Defendants' retaliatory acts would dissuade reasonable employees of Defendants from making complaints regarding Defendants' unlawful compensation practices.

79.

Due to the unlawful retaliation to which Ms. Pruitt was subjected, Ms. Pruitt has suffered and continues to suffer harm, including financial loss due to weeks of lack of employment following her termination.

80.

As a result of Defendants' retaliation, Ms. Pruitt is entitled to all legal and equitable relief available pursuant to § 216(b) of the FLSA, including but not

limited to reinstatement, front pay, back pay, liquidated damages in an amount equal to all lost wages, pre and post judgment interest, attorneys' fees, and costs.

## COUNT IX:  BREACH OF CONTRACT—WAGES
### (Jaylae Pruitt against all Defendants)

81.

Ms. Pruitt realleges and incorporates Paragraphs 1 through 80 of this Complaint, as if fully set forth herein.

82.

Defendants agreed to pay Ms. Pruitt an hourly wage of $12.00 for each hour worked.

83.

By failing to pay Ms. Pruitt for each hour worked at the agreed-upon amount of $12.00 per hour, Defendants breached their agreement with Ms. Pruitt.

84.

As a result of Defendants' breach of contract, Ms. Pruitt is entitled to damages, including pre-judgment interest, in an amount to be determined at trial.

## COUNT X:  ATTORNEYS' FEES AND EXPENSES
### (Jaylae Pruitt against all Defendants)

85.

Ms. Pruitt realleges and incorporates Paragraphs 1 through 84 of this Complaint, as if fully set forth herein.

86.

As set forth above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Ms. Pruitt unnecessary trouble and expense.

87.

As a result of Defendants' conduct as set forth herein, and pursuant to O.C.G.A. § 13-6-11, Defendants should be required to reimburse Ms. Pruitt for the attorneys' fees and costs incurred to prosecute this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

(a)    Enter judgment in favor of Plaintiffs and against Defendants for all damages and relief allowed by law;

(b)    Award Plaintiffs litigation expenses and costs against Defendants, including attorneys' fees, pursuant to applicable state and federal law; and

(c)    Grant such other and further relief as this Court deems just and proper.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted this <u>21st</u> day of November, 2017.

/s/ *Michelle L. Wein*
MICHELLE L. WEIN
Georgia Bar No. 385424
3340 Peachtree Rd. NE, Ste. 2570
Atlanta, Georgia 30326
(404) 981-6679 (telephone)
(470) 276-3033 (facsimile)
mwein@mweinlaw.com
*Counsel for Plaintiffs*